1806.

Beatty
vs
Chapline

BEATTY's Adm'rs. vs. CHAPLINE.

IN this case a writ of *fieri facias* issued on the 7th of April 1806, on a judgment rendered in the late general court, at October term 1805, returnable to this court in June last. At which time the sheriff, to whom the writ was directed and delivered, returned the same to this court, endorsed thereon, that he did, on the 16th of April 1806, lay the same on the goods and lands of the defen-dant, but that he was prevented from making sale of the

DECEMBER.

After a *fieri facias* has been laid, and before a sale of the pro-perty seized there-under, a writ of error, (bond with surety having been approved) does not operate to stay further proceedings under the *fieri facias.*

property by the production of a certificate that a writ of error had issued, (bond with security having been first given and approved,) on the 21st of April 1806. A motion was made on the part of the plaintiffs for a writ of *venditioni exponas*, which motion was continued until this term, when it was argued before CHASE, Ch. J. TILGHMAN, BUCHANAN, NICHOLSON, and GANTT, J.

*Mason*, for the motion, contended, that a writ of error was no *supersedeas* to a writ of *fieri facias* which had been laid previous to the issuing of the writ of error; that an execution was an entire thing, and when once begun, must be completed. In his argument he cited the act of 1713, ch. 4. *Charter vs. Peter*, *Cro. Eliz.* 597. *Moor*, 542, S. C. *Dyer*, 98, 99. *Sure vs. Shelton*, 2 *Roll. Abr.* 491, pl. 5. Ibib pl. 6. *Tocock vs. Honyman*, *Yelv.* 6. *Agres vs. Lenthall*, 3 *Keble*, 308. *Meriton vs. Stevens*, *Willes's Rep.* 273. *Baker vs. Bulstrode*, 1 *Vent.* 255. *The Queen vs. Nash*, 1 *Salk.* 147. 2 *Ld. Raym.* 990, S. C. *Perkins vs. Woollaston*, 1 *Salk.* 321. 6 *Mod.* 130, S. C. *Clerk vs. Withers*, 1 *Salk.* 323. 2 *Ld. Raym.* 1072, S. C. *Spuraway vs. Rogers*, 12 *Mod.* 501. *Bac. Ab.* tit. *Error*, (H.) Ibib. tit. *Supersedeas*, (G.) (D. 5.) (E.) (D. 4.) *Cooper vs. Chitty*, 1 *W. Blk. Rep.* 67. 1 *Burr.* 21, S. C. *Rorke vs. Dayrell*, 4 *T. R.* 411. *Sampson vs. Brown*, 2 *East*, 439. *Gilb. on Executions*, 22, 23. *Imp. Sheriff*, 154, 155; and the *Stat.* 5 *Geo. II, ch.* 7.

*Martin*, against the motion, relied on *The State vs. Page, et al.* 1 *Harr. & Johns.* 475. The acts of 1713, ch. 4, and 1799, ch. 79, s. 10. He referred to and commented on the cases, cited in favour of the motion. Also *Mudd vs. Warren*, 3 *Keble*, 174. *The Complete Sheriff*, 270. *Yelv.* 44. *Lane vs. Bachurst*, 2 *T. R.* 44. The acts of 1715, ch. 33, s. 4; 1732, ch. 22; 1791, ch. 67, s. 4. 3 *Danvers*, 320, pl. 4. *Levett vs. Perry*, 5 *T. R.* 669. *Meagher vs. Vandyck*, 2 *Bos. & Pull.* 370; and *Incledon vs. Clarke*, *Barnes*, 212.

CHASE, Ch. J. It is contended that a writ of error, with bond filed according to act of assembly, after *seizure* of goods on a *fieri facias*, but *before sale*, is no *supersedeas*; and two positions are laid down in support of this doctrine:—

*First,* That an execution is an entire thing, and when once begun cannot be stopped.

*Second,* That the property is changed or altered by the seizure of goods on a *fieri facias.*

On these two positions the argument rests.

1. As to the first position—In a *ca. sa.* I shall admit it, because there is but one single act to be done, and as soon as that is done, the execution is completed and executed—the arrest of the defendant, who is detained in custody to compel payment of the money; and if the *supersedeas* comes after the arrest, it is too late, the execution being executed.

As to a *fieri facias* the position is not supportable in the extent contended for, but is subject to modification.

A *fieri facias* begun by one sheriff must be finished by him or his executors; if out of office, he shall be compelled by a *distringas* to sell the goods, and pay over the money to the plaintiff, and so of his executors.

After seizure of goods on a *fieri facias,* the death of the plaintiff will not prevent the sheriff's going on with the execution; but he may sell the goods, and bring the money into court, which will be paid over to the executor. The death of the defendant after the seizure, will not prevent the sheriff from going on with the execution. These are the only instances in which an execution (a *fieri facias*) is an entire thing, according to the decisions of the courts.

There are four essential acts necessary to be done to perfect the execution of a *fieri facias,* in order to divest the property of personal chattels out of the defendant, and transfer them to another. 1. Seizure of the goods by the sheriff. 2. The appraisement. 3. Public notice of the sale. 4. The sale of the goods by the sheriff after public notice.

In the case of land, another requisite must be complied with to vest the legal estate in the vendee—a deed from the sheriff to him.

The return of the *fieri facias* is necessary for the purpose of ascertaining the sum made by the sale of the goods, to lay the foundation for a second *fieri facias,* in case the sum made should be incompetent to the discharge of the debt and costs; or if there was a surplus in the hands of the sheriff, after payment of the debt and costs, to enable the defendant to proceed against the sheriff, in a summary way, to compel payment of the surplus to him.

1806.

Beatty
vs
Chapline

As to the first—The seizure of the goods by the sheriff. The sheriff by the seizure acquires a special property in the goods to preserve them, subject to the execution, and can maintain trespass or trover for them against wrong doers; they are in *custodia legis*, to be disposed of by the sheriff according to law.

The general property is not in the sheriff, because he has a special or qualified property in contradistinction to the general; and because he cannot retain them at an appraised value and pay the money to the plaintiff.

The general property is not in the plaintiff, because the sheriff cannot deliver them to him at an appraised value in satisfaction of his debt. The question occurs, where is the general property? It is in the defendant, or in *abeyance* in contemplation or intendment of law, and will vest in future where the law directs.

It is said that by the seizure of the goods on a *fieri facias*, the defendant is discharged. I admit the position subject to one restriction, if not more. He is discharged *pro tanto*, that is, to the value of the goods seized. How is that value to be ascertained, and what is the true and legal criterion of it? Not the appraisement, but the price obtained on a public sale;—and the discharge of the defendant is only to that amount, which cannot be ascertained but by the sale and the return of the *fieri facias*. To elucidate it—suppose a *fieri facias* issues for $500, and the sheriff returns, laid as per schedule, and made to the amount of $100, what is the discharge of the defendant? Only *pro tanto*, the $100, and this return lays the foundation for a second *fieri facias* to recover the residue of the debt.

As soon as the sale is made, the general property, which was before in the defendant or in *abeyance*, is transferred to the vendee by operation of law, and he becomes the absolute owner of the goods.

If on a writ of error the judgment should be reversed after sale made, the property will not be divested out of the vendee, and revest in the defendant below, because the property vested in the vendee by operation of law, according to the legal course of proceeding in the administration of justice. But if the judgment should be reversed, after seizure and before sale, the general property, if in *abeyance* by the seizure, will revert to the original defendant by

operation of law, and he is entitled to a writ of restitution to obtain the possession. So that it is plain the property is not changed by the seizure, but by the sale.

It is said that, if goods are taken on a *fieri facias* the defendant is discharged, and the plaintiff cannot issue another execution, or bring an action of debt on the judgment. I have already pointed out in what manner he is discharged, and shall admit the plaintiff cannot sue out another execution, or bring an action on the judgment, pending the *fieri facias*; and the reason is obvious, because it is presumed the sheriff has already taken goods enough to satisfy the debt, and it cannot be known but by the sale whether the goods taken are sufficient or not to discharge the debt; and therefore, during the pendency of the *fieri facias*, he is precluded from proceeding by another execution, or by action of debt on the judgment.

It is also said, if the sheriff takes goods on a *fieri facias*, and they are rescued or lost, the sheriff is responsible, and from thence it is inferred the defendant is discharged. I admit the position, but not the inference generally, because I have already stated my ideas of the nature of the discharge. The sheriff is answerable, because in the first instance put, he can summon the *posse comitatus* to aid him against the rescuers, and can bring suit against them. In the second, if they are lost, it is supposed to be owing to his negligence, and therefore he is answerable, and the recovery against the sheriff would be the measure of the defendant's discharge.

But suppose the sheriff takes a negro on a *fieri facias*, or goods, and the negro dies the next day, or the goods are consumed in the sheriff's house, with his own goods, before he has time to sell them, would the sheriff be liable without any fault or negligence imputable to him? If not, this would constitute another limitation on the position that the defendant is discharged by the seizure on a *fieri facias*.

2. Having premised thus much, I will now refer to the decisions which I consider as supporting the doctrine, that there is no change of the property of the goods taken on a *fieri facias* until the sale is made by the sheriff, and that the *fieri facias*, until the sale is made, is not *executed*, and consequently that a writ of error is a *supersedeas* at any time before the sale.

If sheriff levy goods on a *fieri facias*, and return on hand for want of buyers, the property is in the defendant. 1 *Bro.* 41, (6 *James* I.) A writ of error is a *supersedeas* if the sheriff receives it before sale, because the property is not altered. *Roll. Ab.* 491, *pl. 5*, (17 *James* I.) This case was decided fourteen years after the statute of the third of *James* requiring bail, and is the second case which was decided. The reason, because the property is not altered; and I add, because the execution was not executed before the sale. The sale is the most material part of the execution, because it ascertains the value of the goods, the amount for which the defendant is discharged, divests the property out of the defendant, and vests it in the vendee. 3 *Keb.* 169, *pl.* 4, (25 *Car.* II.) *Yel.* 44. By the seizure of the goods the owner's property is not altered, for the seizure is not any execution, but only the beginning of it. The sheriff after such seizure ought to return the writ executed *in tanto*, and cannot by law deliver them *in pais* to the plaintiff. *Yel.* 44. If the sheriff returns *nulla bona* on a *fieri facias*, and there is a recovery against him for a *false return*, that vests no property of the goods in him, but they remain in the party, and are liable to any subsequent execution for his debt. 2 *Vern.* 238, 9. If the sheriff on a *fieri facias* levies *the goods* and pays the plaintiff with his own proper money, yet he cannot keep the goods to his own use, for the authority by which he acted was to *sell the goods*. *Noy*, 107. Where a writ of *fieri facias* is delivered to the sheriff to-day, and another to-morrow, and the sheriff *executes* the last first, by *making sale* of the goods, such sale will stand good, and the vendee shall hold the goods against him who first delivered the writ to the sheriff. *Smallcomb vs. Buckingham, et al. Carthew*, 420. (9 *Wm.* III.) 2 *Bac. Ab.* 356, *per Holt*, Ch. J. The sale is the execution of the writ of *fieri facias*; the sale transfers the property. *Vide* the case of *Rybot vs. Pupham*, (19 *Geo.* III.) 1 *Term Reports*, 731, *(note.)* Neither before the statute of frauds, nor since, is the property of the goods *altered*, but continues in the *defendant* till the execution executed. 2 *Eq. Ab.* 381, *per* Lord *Harkwicke*. So long as the execution is *executable* but not executed, the allowance of a writ of error is a *supersedeas*, but not afterwards. 1 *Salk.* 321, 322. In the case of *Incledon vs. Clarke, Barnes's Notes*, 212, a question, whether after

1806.
Beatty
vs
Chapline

bail perfected the goods can be restored? *Vide Meriton vs. Stevens*, (16 *Geo.* II.) *Sykes vs. Dawson*, (18 *Geo.* II.) Held, that if a defendant's person be taken by a *ca. sa.* and bail in error afterwards, the person shall be discharged; but in case of a *fieri facias*, the proceedings so far as the sheriff hath gone must stand. 2 *Cromp.* 353, 354. An *elegit* executed on goods only is not a *fieri facias*, for a *fieri facias* is *executed by sale* by the sheriff; but the *elegit* by appraisement of the goods by a jury and delivery to the party. 2 *Bac. Ab.* 349, *(note b.)* According to the statute of frauds and perjuries the writ of *fieri facias*, first delivered to the sheriff, is entitled to the priority; but if the goods are seized and sold under the second *fieri facias*, the goods are protected in the hands of the vendee; but if before sale they are seized under the first *fieri facias*, the sheriff may and ought to sell them on the first *fieri facias*, and pay the money to the plaintiff in that case. 1 *Term Reports*, 729. This decision contradicts the two positions relied on to prove that the writ of error is no *supersedeas* after seizure. 1st. That the execution is an entire thing and cannot be stopped or suspended. 2d. That the property is changed by the seizure. In this case the goods were *first seized* on the *second fieri facias;* they were afterwards *seized and sold* on the *first fieri facias*, and the sale adjudged good, and the money paid over accordingly. Any time before a sale the sheriff has a right to give the preference to that *fieri facias* which by law is entitled to the priority. If the property of the goods was divested out of the defendant by the *seizure* on the second *fieri facias*, the sheriff could not have laid the first *fieri facias* on them, because they were not the property of the defendant; but he did seize them, and sell them on the first *fieri facias after* the seizure on the second *fieri facias*. *Vide* the Rule, and Judge *Buller's* opinion. In this case, *Cro. Eliz.* 597, and *Salk.* 322, were cited and relied on by the counsel who contended for the Rule.

If this case is considered on the act of 1713, *ch.* 4, independent of the *English* authorities, I think it is plain the writ of error is a *supersedeas* at any time before sale; and that such exposition is agreeable to the intention of the legislature and in furtherance of justice. In expounding the act of 1713 relating to appeals and writs of error, we must consider the evils which existed before, and the remedy provided for them, and give such an exposition to

the act as will remove the evils and advance the re medy.

A writ of error, before the act of assembly being a *su persedeas,* the plaintiff sometimes lost his debt by the de fendant's wasting his goods, or becoming insolvent, before the judgment was affirmed. To remedy this evil, bond, with security in double the sum recovered was required, before a writ of error was a *supersedeas.* This was thought by the legislature a sufficient security for the debt and da mages in case the judgment should be affirmed.

In this manner the evil on the part of the plaintiff was fully removed.

The evil on the part of the defendant was, that his per son might be detained in prison, or his property sold, be fore it could be ascertained whether the judgment below was erroneous or not. And further, in case the judgmen't was erroneous, and reversed, he might lose his property by the sale of the sheriff, and payment of the money to the plaintiff, if he should become insolvent before the judg ment was reversed, or before the money could be recover ed back.

If bond is given in the manner prescribed by the act of assembly, the writ of error will stay the issuing of the execution if it had not previously issued, or will delay or suspend the further progress by the sheriff in the execu tion of it, if it was not executed when the bond was filed.

The writ of error bond being in the penalty of double the sum recovered, with two securities approved by the chancellor, was deemed by the legislature ample security for the debt, interest, damages and costs, of the plaintiff, in case the judgment should be affirmed. This is all the plaintiff was entitled to by law; this is all he could in jus tice require, and for this he has ample security, indepen dent of the defendant's property.

If the property is of a perishable nature, subject to na tural decay, the fly or weavel, or casualties of any kind, the plaintiff cannot be injured by its remaining in the cus tody of the law to be operated on according to the deci sion of the appellate court; by which it is to be ascertain ed whether the judgment below is erroneous, and whether the defendant is indebted to the plaintiff or not.

But suppose the court should decide the writ of error is no *supersedeas* after seizure of the goods or lands, and the

sheriff proceeds to make sale, and does sell, and the money is paid over by the sheriff to the plaintiff, and after all this is done the judgment is reversed, and the plaintiff becomes insolvent, or he pays the money over to one of his creditors, and becomes insolvent before a recovery over can be had, what is the situation of the defendant? He is deprived of his goods and his land, although he owed nothing, and he is without remedy. But suppose the plaintiff does not become insolvent, the defendant loses his land, and must bring suit for the money, which in most cases is not more than half the value of the land, because sold at a sheriff's sale for cash.

It was the intention of the legislature to prevent the defendant's being injured by a sale of his property while the writ of error was depending, and he was allowed to interpose his bond, (which was deemed an ample security,) to prevent the sale of his property.

No injury can be done the plaintiff by deciding that the writ of error is a *supersedeas* at any time before sale, because he has ample security for his debt and costs, and he will be fully compensated for the detention of the debt by the damages awarded by the court of appeals. But by a contrary decision, a defendant may be deprived of his goods or lands, or both, and be without remedy, if the judgment should be reversed. The former corresponds with a sound and liberal exposition of the act, is agreeable to the intention of the legislature, and will conduce to the advancement of justice, and therefore ought to be adopted.

If it should be determined that the writ of error is no *supersedeas* after seizure and before sale, the plaintiff will lose the benefit of the writ of error bond, and cannot resort to it in case there should not be enough levied to satisfy the debt, damages and costs,

BUCHANAN, J. (a.) The case is this—A judgment was rendered against the defendant, in favour of the plaintiffs, in the late general court, upon which judgment a *fieri facias* issued, returnable to this court, and the sheriff, to whom it was directed, laid the same on the real and personal property of the defendant on the 18th of April 1806, and on the 21st of April 1806, an appeal bond was filed, and writ of error issued, a certificate of which being shewn to the sheriff, he made return on the *fieri facias* to this court,

(a.) *Tilghman* J concurred with a majority of the court, but he was not present when the judges delivered their opinions.

1806.

Beatty
vs
Chapline

"laid as per schedule, and staid by writ of error;" and the application to the court now is, to award a *venditioni exponas*.

It is contended that the court are not competent to award a *venditioni exponas*, because, as it is said, the writ of error is a *supersedeas*; and the case in 2 *Rol. Ab.* 491, *pl. 5*, has been relied on in support of this position; but that case, by going too far, defeats itself; for it is there said, that the property shall be returned to the defendant, which has not been considered or adjudged to be law; and the reason assigned in support of the *dictum* being untrue, if it does not defeat the position, it at least weakens the authority. That the defendant is not entitled to a restitution of the property, seems to be a position not controverted, and is, I believe, admitted by our brother, the chief judge; nor indeed can it now be a question, for the current of authorities, both before and since *Rolle*, are to the contrary, with this exception, that when the goods are *taken* after the point of time from which the writ of error operates as a *supersedeas*, the seizure is irregular, and for irregularity in the execution, the goods shall be returned; but in no case, except where the execution is irregular, shall the defendant be entitled to a restitution of property. And in the case before us, the goods were taken before the writ of error issued, the seizure therefore was regular and lawful, and not within the exception.

But it has been said, that although the defendant is not entitled to a return of the property, yet the goods shall remain in the condition in which they were found by the writ of error; that is to say, not to be sold, but to continue in the sheriff's hands during the pendency of the writ of error; and in support of this opinion the case of *Incledon vs. Clarke*, in *Barnes's Notes*, has been cited, in which it is said, that where goods are taken under a *fieri facias*, and bail in error afterwards perfected, the proceedings, so far as the sheriff has gone, shall stand; but I do not understand that case to mean, that the goods shall remain in the sheriff's hands until the ultimate determination of the suit in error; on the contrary, I take the true exposition and meaning of the case to be, that the execution being begun, by seizure of the goods, the property is placed without the control of the writ of error, and a *supersedeas* cannot reach it; and indeed the reason of the case is opposed

to any other construction. Writs of error are too frequently resorted to for purposes of delay only; and if a writ of error issued after property taken in execution, was a *supersedeas*, the inconvenience resulting to creditors would be very great, for no defendant would ever sue out his writ of error, until the sheriff had proceeded on the execution; and though the plaintiff should delay his execution to the latest practicable period, the defendant would be as backward with his writ of error; a practice which would prove very vexatious to creditors, and the contrary position can be attended with no inconvenience or loss to defendants; for if they have merits, and in truth wish to take their cases to a superior tribunal, for good cause, it is at all times in their power to do so, before any proceedings are had under the judgments below. But it is said, that if a writ of error, issued after property taken under a *fieri facias*, is no *supersedeas* as to the sale, it would work great hardships to defendants in cases in which the judgments below should be reversed; but that cannot be deemed a hardship which a defendant draws upon himself by his own negligence; and if it is an inconvenience, it is one of his own seeking; it is an inconvenience to which, in a controverted case, he need never be subjected, and which, in cases of removal for delay only, he deserves to suffer, and none but himself should suffer by his laches, which might not be the case if the goods were to be arrested in the sheriff's hands to abide the suit in error; for, though the defendant files his bond with sureties, on suing the writ of error, yet it cannot be contended, that the plaintiff's security would not be lessened by a delay of the sale, until the suit in error was determined. The goods themselves are the best security a plaintiff can have, and if they were to be arrested in the hands of the sheriff until the affirmance of the judgment, not only they might perish, but the appellant, and his securities, might become insolvent, and the appellee be thus defeated of his just claim, so that the security of the plaintiff would certainly be lessened, and that by the intentional delay of the defendant. And in the case of personal property, it would be better for the defendant himself that it should be sold, than to lay in the hands of the sheriff, where there would be the greatest probability that part, if not all, would perish before an ultimate determination.

1806.

Beatty
vs
Chapline

1806.

Beatty
vs
Chapline

The hardship attending defendants was much and ably dwelt upon in argument, as the question related to *goods* seized under a *fieri facias*; but it is admitted, and so are the authorities, that if a writ of error comes after the defendant is taken under a *ca. sa.* it is no *supersedeas*, and the defendant must lie in gaol until the suit in error is determined; and if the suggestion of hardship, is an argument to shew that a writ of error is a *supersedeas* as to sale of goods taken before, the argument applies much more forcibly to the situation of the defendant himself, who is in gaol under the *ca. sa.* for certainly, it is harder to be confined in a prison, than to have goods sold under execution; but this argument of hardship has never prevailed in the case of a seizure of the person under a *ca. sa.* as appears by all the books, and surely then it ought not to prevail where it applies with less force. When a defendant will not sue out his writ of error, before his goods are seized under a *fi. fa.* it affords a strong presumption that his object is delay only, to which as little encouragement should be given as consistently with the strictest principles of law can be; and so much have courts leaned against such practices, that in the case *Masterman vs. Grant*, 5 *Term Rep.* 714, the court refused to stay proceedings, the plaintiff in error having declared that he brought the writ of error for delay.

The property in goods taken by a sheriff under a *fi. fa.* becomes altered by the seizure, by authority of law, for all the purposes intended by the writ; and therefore it is, that a writ of error which comes afterwards, is not a *supersedeas*; for the writ of *fi. fa.* may, by the seizure, be said to be gratified, since the sheriff, without making any return thereof, may sell the goods, and satisfy the judgment. It is said in 1 *Brownlow*, 41, "that if the sheriff takes goods under *fi. fa.* and returns that they are in his hands for the want of buyers, the property *remains* in the defendant;" yet such is the current of authorities to the contrary, that I cannot yield to that position, if by it is meant that the *property* is not altered; and the writer may have intended to attempt a distinction between the property being *altered*, and *divested* out of the defendant. There is a case also in 2 *Equity Cases Ab.* 381, referred to in the argument, in which it is said, that neither before nor since the statute, (by which the property is only bound by the delivery of the

writ to the sheriff,) is the property of the goods altered, but continues in the defendant until execution executed. But I do not consider that case as an authority against me, on the contrary, I view it as an authority in support of the position I have taken. The question in that case did not arise on *the effect of the seizure by the sheriff*, but *of delivery of the writ to the sheriff*. Before the statute the goods were held to be bound from the teste of the writ, but by the statute from the delivery of the writ to the sheriff; and Lord *Hardwicke* meant to say no more, than, that although the goods were bound, yet the property was not thereby altered until seizure by the sheriff; and probably by the expression "execution executed," he intended no more than *a taking under a fi. fa.* or he may, (under the idea of an execution being an entire thing,) have meant that by the taking, an execution becomes executed; and the same language is used in the case *Meager vs. Vandych*, in 2 *Bosanquet and Puller*, 570, where the taking of goods by *fi. fa.* is called the execution of the writ.

The property, by seizure, is altered for all the purposes of the execution, and thus is placed out of the reach of a *supersedeas* on writ of error. If the sheriff after seizure dies, his executor may sell; after he ceases to be sheriff he may sell; if the plaintiff or defendant, or both, should die after seizure, he may sell, and he may sustain an action for the goods against a stranger, or even against the defendant himself, if he takes or destroys them. In short, the authorities are so numerous and unequivocal in support of this position, that all reasoning on the subject seems to be shut up. Lord Chief Justice *Willes*, in deciding the case, *Merriton vs. Stevens, page 681* of his reports, says, (in speaking of the case in 2 *Rolle's Ab.* 491,) very laconically, (which shews that the principle was then well settled,) "the reason not being a true one, I give no credit to this case." And the reason assigned by *Rolle* is, that the property is not altered by the seizure. And *Gilbert*, in his treatise on executions, not by quotations from other authors, and without reference to any, but as a text, lays it down as established law, as an undeniable principle, that the property in the goods is altered by seizure, and the sheriff may sell notwithstanding *supersedeas* comes afterwards, and if he does not the court will award a *venditioni exponas*. The same position is also laid down in *Impey's*

*Sheriff*, both books of very high authority; and it cannot be presumed that the question was not fully settled when they wrote. It is a general and a true position, that a defendant is discharged by the seizure of goods under *fi. fa.* so far as the goods taken will go; and so far the judgment, as between the plaintiff and defendant, is in effect satisfied, and the debt discharged, and being so satisfied, there is nothing for a *supersedeas* to operate upon, or in other words nothing to be superseded; and hence it is, that a writ of error can in no way affect goods already taken; for it would be idle to say, that a writ of error, (which is issued to review the proceedings in the court below, and to prevent a judgment being satisfied before such review,) shall operate as a *supersedeas* to that end, after the judgment, so far as concerns the defendant, is actually satisfied; for the office of a *supersedeas* is not to undo what is done, but to prevent further proceedings; therefore, if goods only to part of the amount of the judgment be taken before the writ of error issues, it does not undo what is done, but shall be a *supersedeas* as to the taking of any other goods. On these grounds, if there were no adjudications on the subject, and the question was now to be decided, I should be of opinion that the writ of error in this case is not a *supersedeas*. But the authorities, independent of any reasoning, are not to be combated. An execution is said in the books to be an entire thing, and when once begun cannot be stopped or superseded. But the different writers have not very clearly explained their *meaning* of the entirety of an execution, though they all, except *Rolle*, agree in this, that when once begun it cannot be superseded. The writ of *fi. fa.* commands the sheriff that of the goods, &c. of the defendant, he cause to be made the debt, &c. The making of the debt is the thing to be done, and the seizing of the goods, the sale, &c. are but the manner, and, as between the plaintiff and defendant, the debt is in effect made by the seizure, so far as the goods will go; or the execution may be said to be an entire thing in this, that after seizure, the appraisement, notice and sale, are matters of course, and incident to the office of sheriff; and when done, have relation back to the original taking, and thus by fiction of law, arising out of the doctrine of relations, it becomes an entire thing—as is the case in several kinds of conveyances; for instance, by fine or common recovery; and also

1806.

Beatty
vs
Chapline

in the common case of a grant, which issues as a matter of course, (all requisites having been previously complied with,) and relates back to the certificate, and thus makes it one entire conveyance. But the entirety of an execution has been denied, and in contravention of the principle, the case of *Hutchinson vs. Johnson,* reported in 1 *Term Rep.* 729, has been cited and relied on, tho' I cannot conceive how the decision in that case in any way affects the question. The decision is, that where two executions come to the hands of a sheriff, though he seizes the goods by virtue of that which was last delivered, yet he may and ought to apply them to the discharge of that which was first received, because the goods were bound by the delivery of the first; but the court also said, that if the sheriff in such case actually sells under the second execution, the sale shall stand good, and the person claiming under the first execution shall have his remedy against the sheriff; and this last position, under the statute of frauds, for the benefit and quiet of innocent and *bona fide* purchasers. But this case does not at all deny the entirety of the execution, but is grounded on the principle that the goods being bound by the delivery of the first writ, the seizure under the second was altogether irregular. And in *Carthew's Rep.* 420, the case of *Smalcomb vs. Buckingham,* the same principle in favour of a purchaser is decided. The authorities in support of the principle, that a writ of error after goods taken under a *fi. fa.* is no *supersedeas,* but that the sheriff shall go on to sell, are very numerous, and some of those which are most in point, and by which the principle seems to be so firmly established as not now to be shaken by any artificial reasoning, I will take a short view of, as this is a case depending upon authorities.

The first of them in order of time is the case of *Charter vs. Peeter,* in *Cro. Eliz.* 597, in which case the sheriff took the defendant's goods by a *fi. fa.* but before sale a writ of error and *supersedeas* came, whereupon the sheriff made return that he had seized the goods, but that they were in his hands *pro defectu emptorum,* and also that a *supersedeas* was awarded; and on a motion for a return of property, the court denied a restitution, and awarded a *venditioni exponas,* because the execution was begun by the seizure; and a case in *Dyer,* 98, to the same effect. In *Moor,* 542, it is laid down, that if the sheriff has the goods

1806.

Beatty
vs
Chapline

of the defendant in his hands under a *fi. fa.* and a *supersedeas* comes, he shall not deliver them, but shall sell them, because the beginning of the execution was before the *supersedeas* came, and the execution being entire shall not be divided. In the case *Tacok vs. Honyman*, in *Yelv.* 6, it is held, that if a writ of error and *supersedeas* come to the sheriff after goods taken, he shall proceed to sell what he has taken, but shall levy no more. And in the case of *Baker vs. Bulstrode*, 1 *Ventris*, 255, it is decided, that if the sheriff takes goods by *fi. fa.* before writ of error, the execution is not to be undone by writ of error afterwards, though at the time the writ of error comes the goods may be on hand for want of buyers. But it is argued, that these cases were all decided before the statute requiring bail in error, and that after the statute the principle before established by them ceased to be law; and in support of this position the case in 2 *Rol. Ab.* 491, which was after the statute, is relied on; and this is the only case I have seen either before or since the statute to the contrary. And it is worthy of remark, that security or bail in error being required by the statute, is not given as the reason of the doctrine laid down in *Rolle*, nor does it appear that the statute in that case was considered as working any new principle, but the reason assigned is, because the property is not altered by the seizure. This, Lord Chief Justice *Willes* says, is not a true reason, and in that he is supported by the later and very respectable authorities. In the case, *Rocke vs. Dayrell*, reported in 4 *Term Reports*, 411, Lord *Kenyon*, speaking of the writ of *fi. fa.* thus expresses himself—"As the property of the debtor's goods is bound by the delivery of the writ to the sheriff, there then remains no property in the debtor, on which the prerogative of the Crown can attach;" a much stronger case, if it is law, than that of actual seizure.

In the case, *Clarke vs. Withers*, reported in *Salk.* 322, 3, and 2 *Lord Raymond*, 1072, these points were solemnly adjudged by the whole court, but particularly by *Holt*, Chief Justice, and *Gould*, Justice—That a seizure of goods in execution is a discharge of the judgment; that the substantial part of the execution is the seizure, and that the rest is all form; that an execution is an entire thing, and not to be superseded after it is begun, and that the sheriff after seizure, (as a matter incident and of course,) is bound to

1806.

Beatty
vs
Chapline

sell; that after seizure the judgment, (as to the defendant,) is discharged and satisfied; that by the seizure the sheriff gains a special property, and the property in the goods is divested out of the defendant; that the plaintiff has no farther remedy against the defendant, but must go against the sheriff; for the defendant having lost his goods, may (in an action brought upon the judgment,) plead levied by *fi. fa.* in bar, and it will be good. The same principle, as to the alteration of the property by seizure, is recognised and asserted in various other books of high authority, and particularly *Gilbert on Executions*, 23, and *Impey's Sheriff.* Let it be observed, that the only reason assigned in *Rolle*, why a writ of error is a *supersedeas* after seizure, is "that the property is not altered by the seizure," which is an implied admission, that if the property was altered, the writ of error would not be a *supersedeas*. And *Gilbert*, and the other writers say, that a writ of error after seizure is no *supersedeas*, because by the seizure the property is altered; hence it appears, that the question, whether the writ of error is a *supersedeas* or not, depends on the question whether the property is altered or not by seizure. And the case in *Rolle* appears in so questionable a shape, and is arrayed in so doubtful a reason, that it must sink in the current of authorities by which it is overwhelmed. But independent of this reasoning, there are many adjudged cases, (since the statute requiring bail in error, and since *Rolle*,) which fix the principle, that a writ of error after seizure is not a *supersedeas*; and this proves that in *England* the statute was not considered as affecting the case.

In the case, *Agers and Lenthal, in* 3 *Keb.* 308, 9, it is said, "that on *fi. fa.* and seizure, if no *supersedeas* comes before sale, it is good; and if error be mesne between seizure and sale, it doth not avoid it." The plain and obvious understanding of which is, that notwithstanding a *supersedeas* comes after seizure, yet the sheriff, having taken goods before, if he proceeds to sell, the sale shall be good; and as error cannot be mesne between seizure and sale, unless there be a sale after the writ of error, the latter branch of the opinion must mean, that the error does not avoid the sale; by which it is evident, that the writ of error coming after the seizure is no *supersedeas*, for if it was, the sale would be void. Lord *Mansfield*, in delivering the opinion of the court in the case, *Cooper vs. Chitty*, reported

in 1 *Wm. Blackstone*, 65, 67, and 1 *Burrow*, 34, lays it down as a fixed principle, that a writ of error cannot supersede an execution, or a *fi. fa.* actually begun; and, as he says, for the plainest reasons, because the execution is entire, and if once lawfully begun must be completed; and because, as between the plaintiff and defendant, the debt is discharged by a seizure under *fi. fa.* In the case *The Queen vs. Nash*, reported in 2 *Lord Raym.* 989, the question arose on the effect of a *certiorari* to remove a conviction; which was brought after the constable had distrained the goods of *Nash* under a warrant from the justices to levy the penalty for deer stealing; and *Holt*, Chief Justice, in deciding the case, likened it to the case of goods taken under a *fi. fa.* before writ of error brought, and there laid it down, (not as a case of first impression and then to be decided, but as the known and acknowledged law of the land,) that when goods are taken under a *fi. fa.* and then a writ of error comes, it is no *supersedeas*, but the sheriff shall proceed to sell, and if he does not, a *venditioni exponas* may be awarded. And so fully is the principle established in *England*, that in the case, *Merriton vs. Stevens*, in *Willes Rep.* 271, Serjeant *Wynn*, who argued in support of the rule to set aside the *fi. fa.* admitted, that if the sheriff had taken the goods before sealing of the writ of error, he might have proceeded to sell them afterwards. Thus, then, it appears by all the authorities, except *Rolle*, (both before and since the statute requiring bail in error,) that a writ of error which issues after goods are seized under a *fi. fa.* is not a *supersedeas*. And indeed the case in *Rolle* may be reconciled with the other decisions; for in the case, *Sampson vs. Brown*, reported in 2 *East*, 439, 444, it is said, that the *supersedeas* issued after the writ of error upon which it was grounded, so that, although the *supersedeas* came after the goods were taken, yet the writ of error might, (for any thing appearing in the case,) have been issued and allowed before, and the *supersedeas* having relation back, the taking of the goods was irregular. The case is very short, and by no means full. As to the entirety of an execution, if it should be admitted to be a doctrine established on artificial reasoning, yet it is an established principle, and, (like many others supported only by the same kind of reasoning,) it cannot now be shaken, without overthrowing every authority upon the subject, for

1806.

Beatty
vs
Chapline.

more than a century past. We have seen that by the common law, a writ of error, which (if taken out in time,) was a *supersedeas* without security, was not a *supersedeas* if sued out after goods taken under a *fi. fa.* We find also, that in *England* the statute which requires bail in error, has never been considered as altering the principle, or at all affecting the case, nor indeed could any such construction be given to the statute, which is in these words: "That no execution shall be stayed or delayed, upon or by any writ of error," &c. "unless," &c. Thus the statute does not give a writ of error any more efficacy than it had at common law, but on the contrary takes from it all the efficacy it had at common law as a *supersedeas*, unless it is accompanied by bail; and in fact makes it, with bail, what it was before without bail, and no more; and this being the uniform construction of the statute, not denied even by *Rolle* himself; for (as I have before observed, the case put by him is not attempted to be supported by authority of the statute, but by another reason which is not law,) the same construction must be given to the act of assembly 1713, *ch.* 4, regulating writs of error, &c. which is in the same words contained in the statute, and probably so far copied from the statute; and indeed the same construction has always been given to the act of assembly, and acquiesced in until lately. The case then is shut up. In *England* no question exists, nor would an argument be heard on the subject; and in this state the words of the act of assembly, and the act of parliament, being the same, they must receive the same construction, and our courts of law must be bound by the authorities, whatever artificial reasonings might be offered to the contrary. The old *supersedeas* law, and the practice which is said to have been pursued under that act, have been urged by counsel in argument, to shew the true construction of the act of 1713, *ch.* 4, but neither that act, nor the practice under it, (whatever that practice may have been,) has any bearing on the case; for when it is said that an execution is an entire thing, and cannot be superseded, it is intended by a *supersedeas* on writ of error, and not a *supersedeas* created by statute, or an *audita querela*, &c.

The cases which turn upon the point of time, from which a writ of error was held to operate as a *supersedeas*, relate to this case in no other manner than as they show, that at common law a writ of error, which issued after goods were

seized under a *fi. fa.* was not a *supersedeas;* and in this case the writ of error, having issued after the goods were taken by the sheriff, it must receive the same construction which at common law it would have had, the act of assembly giving to writs of error as such, no greater efficacy than they had before; nor does the circumstance, that the *fi. fa.* in this case, was laid on lands as well as goods, make any difference; for by the act of Parliament, under which lands are held to be liable to execution for debt in this state, real and personal property are placed precisely on the same footing.

Upon the whole, I consider this not as a new case now to be determined, but one which has been settled ever since the reign of Queen *Elizabeth* and not shaken by any adjudged cases since, except that of *The State, use of Warder, vs. Page, et al.* which was determined contra in the eastern shore general court, by my brother the Chief Judge, whose opinions I very much respect, but to which I cannot yield in this case, being tied up by what must now be considered as the established law; and am therefore of opinion that a *venditioni exponas* ought to be awarded.

NICHOLSON, J. said, he had uniformly been of opinion, that it was improper for the court in the last resort, to assign their reasons for the final judgment. In the inferior court it was proper that they should give the reasons of their decision, because it afforded counsel an opportunity, when they came before the court of appeals, to shew the fallacy of the reasoning of the court below, if it was fallacious. He had therefore, on this account, always given the reasons of the court in which he presided. But here there was no necessity of that kind, because the decision of the court of appeals became the law of the land, whether that or their reasoning was or was not correct; and where the reasoning was bad, it was too often blended with the decision of the court, and considered likewise as the law. The impropriety of assigning reasons in the court of the last resort, he thought was strongly exemplified in this case. Two positions had been taken in the opinions given by two of the judges, which in his opinion did not belong to the case. These were, whether the seizure upon a *fieri facias* did or did not divest the property out of the defendant, and whether the defendant was thereby discharged. Upon

these two points, he *might* agree with the presiding judge, *(Chase,)* although he differed with him in the result; and upon the same points he *might* differ with the other judge, *(Buchanan,)* although he agreed with him in the result. He wished it, therefore, to be distinctly understood, that he gave no opinion upon either of these points, except that they had no bearing whatever on the question submitted to the court.

He had been induced to decide, that a writ of error after seizure upon a *fieri facias* was no *supersedeas*, by a long train of decisions for more than two hundred and fifty years, (from the 1st year of Queen *Mary.*) A train of decisions prevailing for such a length of time, with the solitary exception of the case in *Rolle*, he considered equal to a statutory provision. The whole reasoning on the point *really* before the court, was given in three lines by Lord *Mansfield*, in the case in 1 *Wm. Blackstone's Reports*, 67, viz. *An execution being entire in its nature, and once begun, cannot be superseded by a writ of error, but must be completed, because the property is of a perishable nature, and is not to remain in the sheriff's hands to await the final determination of the suit.*

Gantt, J. This is a motion for a *venditioni exponas*, and the case is shortly this: A *fi. fa.* was regularly issued upon a judgment obtained in the late general court; this *fi. fa.* was regularly executed by a seizure of real and personal property. After seizure, the defendant filed a writ of error bond, and a writ of error accordingly issued, mesne the seizure and sale of the property taken. The sheriff returns that the sale of the property is stayed by writ of error, and the motion for a *venditioni exponas* is founded upon this return.

I was absent on the first day of the argument of this motion; but have been furnished with a list of the authorities cited by the counsel. I have reflected upon the case, both before and since the argument, and have referred to the authorities cited—and as I concur with the majority of the court, I will, in as brief a manner as the case admits of, give my opinion, and the principal reasons which govern my decision.

I shall not pursue the various cases which have been cited in order, or particularly comment upon them, I con-

sider it a waste of time, and useless trouble; almost the whole of them are founded upon one of these questions—whether a writ of error is a *supersedeas* from the *teste* or *allowance* of the writ or *notice* of its execution; whether the execution has been regularly issued, or served, or according to the rules of practice established by the courts in *Great Britain* for putting in bail on writs of error under the statute?

Decisions, founded upon either of these principles, do not apply to the present case. The sole question is, whether this writ of error operates as a *supersedeas* to stay a sale of the property taken under the *fi. fa.* regularly issued and executed by seizure, before the writ of error issued? In other words, whether the plaintiffs are entitled in law to a writ of *venditioni exponas* to compel the sheriff to sell that property?

The statute of *James*, and the act of assembly *quo ad* the subject of inquiry, are in my opinion exactly similar. I will dispose of them first, and then advert to those principles of the common law which govern this question. The statute of *James* was meant to correct the abuse of writs of error issued for delay, and to remedy a defect of the common law, which entitled a party to this writ, without giving the plaintiff security. Its effect was to destroy the *implied supersedeas* of a writ of error, unless security was given. Cases daily occur of issuing writs of error without giving security, and the only difference between such writs at this time and before the statute or act of assembly is, that it does not, at this time, supersede an execution, formerly it did supersede it.

The act of assembly prescribes a different mode for taking the security than the one prescribed by the statute, but makes no further change of the common law in this respect.

Neither the statute, nor the act of assembly, deprives the plaintiff of any right, or destroys any property, interest or security, which either he or the sheriff had acquired. It extends not the legal operation of that writ, nor does its effect reach farther since the statute than it did before, when no security was given. It supersedes nothing since, which it did not supersede before; but takes away from the defendant that power which the common law gave him, of staying further proceedings on a judgment without

any security at all—and this is the whole extent of the statute and act of assembly, as far as relates to the present subject.

No case has been cited, and none can be quoted, shewing, that by the statute or act of assembly, a more extensive effect or operation has been given to the *supersedeas itself*, than what it had at common law—none of the cases cited hinge on this principle.

At common law a *fi. fa.* charged only goods and chattels. In this state lands also, in which the defendant *has any legal* estate for his own use, may be taken under this process; and being equally liable to seizure, that species of property becomes, of course, equally liable to the same rules and principles which govern the other; I mean as to the seizure, and as to the power of selling, and also as to the alteration of property, but subject to a difference as to the time and manner of selling it. A sheriff may maintain actions for injuries done to the one as well as for the other species of property, according to the nature of the injury, and the qualified interest which he has.

At common law a *fi. fa.* charged the defendant's goods from the *teste of the writ*—a writ of error, therefore, operating as a *supersedeas*, would destroy this charge, if there had been no seizure, *not expressly* so, but by legal implication and consequence. But if the sheriff had seized goods under a *fi. fa.* he thereby acquired a property in them— To what extent or purpose? *For the purpose of selling them, and of having the money in the court to pay to the plaintiff.* (*Gilb.* 15, &c.) This property of course was not absolute, *but qualified.* It was co-extensive with this object and purpose; and only extended thus far, and no farther. Some authorities say, that by the seizure the defendant's property *was divested*—'tis true, it was so, but not absolutely. The expression must be construed with reference to the subject and nature of the case; that is, as far as the teste of the writ or seizure of the goods had vested a right or property in the sheriff or the plaintiff— so far, and no farther, was the defendant's property in them destroyed. What was the purpose of the law in vesting the property in the sheriff, or in charging the goods from the teste, and afterwards by statute, from the delivery of the *fi. fa.* to the sheriff? In the first place, to prevent the defendant from fraudulently selling or wasting them;

1806.

Beatty
vs
Chapline

and secondly, for the purpose of the sheriff selling them, and having the money in court. Therefore, *eo instanti* that the purpose of the law was gratified, the residue of the goods were exonerated and belonged to the defendant, whether they had been seized or not. The property which the sheriff had acquired thereby, ceased; the liability to pay the plaintiff was exonerated, and the defendant's ownership once more became complete. While the sheriff's property continued he might maintain trover or trespass; and till a sale, the defendant might lawfully, in my judgment, contract for the sale of, or *will the goods, subject to the charge which the law had imposed on them.* Now the sheriff had a qualified interest in the goods; the defendant had a qualified interest also; and these qualified interests together, composed a full and absolute ownership; each party, therefore, had a property in the goods. If the sheriff died, his executors had his property in them, subject to the *legal purpose* before mentioned. If the defendant died, his executors had his interest. The power which the sheriff had of selling, when exercised, ultimately determined the qualified interest of each, and vested the absolute ownership in the purchaser. After the legal purpose was answered, the residue of the goods belonged to the defendant, or his assigns, as the lien or charge on the goods, or the property divested out of the defendant had ceased, or was destroyed as to such a residue.

Let us now consider the nature of a writ of error, viz. its object and its effects.

First, as to the object. It is to remove the record and proceedings of an inferior tribunal to a superior one, to review that record, and reverse the judgment of the inferior court if it is erroneous; and the record must of course be the only subject of inquiry, for the suggestion upon which the writ issues is, that in the record and proceedings there is error.

It removes the record and proceedings. If no *fi. fa.* or *ca. sa.* has issued, then by *legal implication* this writ of error operates further, it suspends the power of the inferior court to issue a *fi. fa.* for the record is considered, in law, as removed *eo instanti* that the writ operates; therefore there is no foundation for the inferior court to issue a *fi. fa.* as it can only be grounded on a *judgment in the court* which issues it, and the judgment is removed with

the proceedings. Hence the doctrine of contempt in the inferior court in issuing the *fi. fa.* or the sheriff in serving it after such writ of error; and hence the doctrine of executions irregularly issued.

But if the *fi. fa.* has issued, and is not served, the sheriff has no authority to levy it for the same reason; because by *legal implication* the power and authority of the inferior court is superseded; and as the sheriff derives his authority from the court, and although the writ of *fi. fa.* issued while the court had the power to issue it, yet, as before the sheriff had levied the *fi. fa.* the power of the court had terminated by legal inference and intendment, the sheriff, if he does serve the *fi. fa.* acts without authority, the writ of error surceasing all proceedings. Hence the doctrine of contempt in the sheriff if he does afterwards serve the execution; and hence also the *legal implication* which makes the writ of error operate as a writ of restitution of the goods thus taken in execution; because the sheriff had no authority at the time to levy it, and his seizure for that reason was *irregular.*

But if the *fi. fa.* or *ca. sa.* has been served—if the goods or body of a defendant has been taken in execution, then the common law writ of error does not supersede the execution thus executed; for it is a principle of law, that an execution is an entire thing, and once begun must be completed. If a *fi. fa.* is levied, it is as much the duty of the sheriff to sell the goods, and raise the money, as it is his duty, if he has arrested the defendant on a *ca. sa.* to imprison him till he pays the money. The seizure of goods, and the arrest of the body, are the principals, the selling of the goods, or imprisoning the body, are the incidents. Now, if a writ of error will supersede the sale after a seizure of the goods under a *fi. fa.* why not the imprisonment, after the arrest of the body, if it issued *mesne* the occurrence of the principal and of the incident?

After seizure of the goods or arrest, the whole object of the judgment and execution is answered as it respects the plaintiff and defendant. The defendant is discharged from the judgment to the extent of the goods taken, and the plaintiff looks to the sheriff only for the amount; or if the body is arrested, it is a like satisfaction *quo ad hoc*; and if then the writ of error supersedes all further proceedings, it is only in the suit between the plaintiff and

defendant, and by the seizure of the goods to the amount of the judgment, or *quo ad* the amount of the goods seized, or by the arrest of the body, all proceedings between the plaintiff and defendant are at an end, and there are no further proceedings to supersede.

This writ operates also as a writ of *restitution,* but only where an execution has *irregularly* issued, or been *irregularly* served. It does not operate as such where there is *no irregularity,* for then the very principle upon which it operates, as a writ of restitution, is wanting. The *irregularity* here meant is evidently determined and ascertained, by the time when the writ of error operated, either upon the power of the court itself to issue the *fi. fa.* or upon the power of the sheriff to execute the writ; his sale in such case is void.

The writ of error annuls no act or proceedings *regularly and legally done.* It leaves such acts in *statu quo.* A writ of restitution, if the judgment is reversed, issues of course. Now, if the writ of error itself is in all such cases to be considered as a writ of restitution, it is in effect issuing the writ of restitution before a judgment of reversal, which legally cannot issue till afterwards; that is, to give the remedy first for the injury alleged to have been done, and afterwards to determine whether the injury has been done or not.

The sheriff can maintain trespass or trover for injuries done the property in his possession, as sheriff, even if done by the defendant. If the writ of error is a restitution, as contended for, it avoids that possession or property, and consequently his right to sue for such injury. Suppose the defendant has committed such injury, and the sheriff had sued between the 16th and 21st of the month when this property was taken, it nonsuits the plaintiff, for his property was destroyed and overreached by the writ of error, and although his duty required he should protect the property, and sue for the injury done to it, yet the law, which requires and enjoins this duty, defeats the obligation it has created itself, and nonsuits the very action it has *virtually, by imposing* the duty, directed him to bring.

Other cases might easily be suggested, where similar violations of long established principles would arise from the construction of the legal operation of a writ of error, now contended for.

But although I am for a *venditioni exponas* issuing in this case, I am not to be understood as saying that the court would not lay their hands upon some cases of a like application, where it evidently appeared that manifest injustice might be done. The money may be ordered to be brought into court, and await the event of the writ of error. This power should, however, be exercised, not upon the suggestions of possible cases, but upon cases where there exists well grounded apprehensions of such irreparable injury, unless this power of preventing it was resorted to. The circumstances, properly disclosed, in such instances, should be previously made manifest to the court. This power was exercised by the court in the case reported in *Willes.*

I have avoided, as I stated at first, any comments upon particular cases. Those which hinge either upon the irregularity of issuing the execution, upon the time when a writ of error began to operate, or upon the rules of court, founded upon the statute of *James*, I consider as not bearing upon this case.

I have, on more than one occasion, examined into the law upon this subject. The result of my inquiry has long since confirmed me in the opinion I have at present; and although I have considered the cases cited by the defendant's counsel with attention, I find no reason to alter that opinion, but am more confirmed in it; but I lament that accident prevented my hearing the arguments in this case.

A writ of *audita querela*, or a bill of injunction, in ordinary cases, will remedy any inequity in the judgment itself, or in issuing or completing the execution. But the writ of error cannot be construed to have a more extensive operation and effect, merely to reach the inconveniencies which *possibly* may arise from its ordinary extent and operation. The law has long since defined its limits, and the court cannot extend them. Other remedies are provided, and open to the defendant's benefit, if the circumstances of his case require it, and we cannot create a new one to give a more summary relief, even if the circumstance of his case would justify a claim upon the score of particular hardship.

VENDITIONI EXPONAS ORDERED.